**PELTON GRAHAM LLC**
Brent E. Pelton
Taylor B. Graham
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.PeltonGraham.com

*Attorneys for Plaintiffs and the putative*
*FLSA Collective and Class*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ALMEDIN RAMIC and AGRON RAMIC, Individually and on Behalf of All Others Similarly Situated,**<br><br>**Plaintiffs,**<br><br>-against-<br><br>**BILTMORE GENERAL CONTRACTORS, INC., and FRANK GEISER, Jointly and Severally,**<br><br>**Defendants.** | **COLLECTIVE & CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiffs Almedin Ramic and Agron Ramic ("Plaintiffs"), individually and on behalf of all others similarly situated, as class and collective representatives, upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

### NATURE OF THE ACTION

1.      Defendant Biltmore General Contractors, Inc. ("Biltmore") is a construction and renovation contractor based in Staten Island, New York that provides construction services and labor on publicly funded school construction projects.

2.      At all times relevant, Plaintiffs were paid per-shift rates that did not include prevailing wages or supplemental benefits for the construction work they performed on New York City and New Jersey Public Schools. In addition, Plaintiffs did not receive wages of any kind for certain hours that they worked, including but not limited to, work performed at Defendants' yard loading construction materials onto trucks and travel time to/from Defendants' yard and the New York City and New Jersey Public School Projects, resulting in significant underpayment of regular and overtime wages each week.

3.      Plaintiffs bring this action to recover unpaid overtime pay pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq.* and to recover unpaid prevailing wages, daily overtime premiums and supplemental benefits which they were entitled to receive for work they performed pursuant to contracts entered into between Biltmore and New York State and/or New York City government agencies, which required payment of prevailing wages pursuant to New York common law. Plaintiffs also bring claims to recover unpaid prevailing wages, daily overtime premiums and supplemental benefits which they were entitled to receive for work they performed pursuant to contracts entered into between Biltmore and New Jersey government agencies, which required payment of prevailing wages pursuant to the New Jersey Prevailing Wage Act, N.J.S.A. § 34:11-56.25 *et seq.* ("NJPWA").

4.      Plaintiffs also bring claims for Defendants' failure to provide proper wage notices and wage statements, pursuant to NYLL §§ 190 *et seq.*

5.      Plaintiffs bring their FLSA claims on behalf of themselves and all other similarly situated employees of Defendants and their NYLL and New York Common Law claims on behalf

2

of themselves and a Federal Rule of Civil Procedure 23 class of all employees performing construction and/or demolition work for Defendants in New York during the relevant statutory period. Plaintiffs bring their NJPWA claims individually.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337 and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

7.      In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants' principal place of business is located in this district and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

9.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

10.     On March 20, 2020, New York Governor Andrew M. Cuomo signed Executive Order 202.8 in an effort to stem the spread of COVID-19, which tolls the thirty (30) days "any specific time limit[s] for the commencement, filing, or service of any legal action, notice, motion or other process or proceeding" under New York State laws or court procedural rules. The thirty (30)-day tolling period began on March 20, 2020 and continue until April 19, 2020. On April 7, 2020, Governor Cuomo signed Executive Order 202.14, which extended the tolling period to May 7, 2020. Subsequently, on May 7, 2020, Governor Cuomo issued Executive Order 202.28, tolling all statutes of limitations for an additional thirty (30) days through June 6, 2020. June 6, 2020. On

June 6, 2020, Governor Cuomo issued Executive Order 202.38, tolling all statutes of limitations until July 6, 2020. On July 7, 2020, Governor Cuomo issues Executive Order 202.48 tolling all statutes of limitations until August 5, 2020, Governor Cuomo issued Executive Order 202.55, which tolled all statutes of limitations until September 4, 2020. On September 4, 2020, Governor Cuomo signed Executive Order 202.60, which extended the tolling period an additional thirty (30) days to October 4, 2020, Governor Cuomo issued Executive Order 202.67, which extended the tolling period to November 3, 2020. In total, the Executive Orders set forth herein provided for a tolling of the statute of limitations of two hundred and twenty-eight (228) days.

## **THE PARTIES**

**Plaintiffs:**

11.     Plaintiff Almedin Ramic ("Almedin") was, at all relevant times, an adult individual residing in Richmond County, New York.

12.     Plaintiff Agron Goni Ramic ("Agron") was, at all relevant times, an adult individual residing in Richmond County, New York.

13.     During the relevant time period, Plaintiffs performed painting work for Defendants on various public school projects, including but not limited to: Flushing High School in Flushing, Queens (the "Flushing HS Project"); the Michael J. Petrides Elementary School (P.S. 80) in Staten Island; Far Rockaway High School in Queens; August Martin High School in Queens; P.S. 56Q The Harry Eichler School in Queens; the Maspeth Town Hall Community School in Queens; a public school located near 72 Narrows Road in Brooklyn; and demolition work at a public elementary school located in Newark, New Jersey (the "Newark Elementary School Project").

4

**Defendants:**

14.    Defendant Biltmore General Contractors, Inc. ("Biltmore" or the "Corporate Defendant") is an active New York corporation registered on March 9, 1989, with its principal place of business and New York State Department of State Process Address at 526 Midland Avenue, Staten Island, New York 10306 ("Defendants' Yard").

15.    Defendant Frank Geiser ("Geiser" or the "Individual Defendant" and, together with Biltmore, the "Defendants") is an owner, operator, and duly authorized Officer of the Corporate Defendant. Geiser is also listed in New York State Department of State records as the Chief Executive Officer of the Corporate Defendant.

16.    Upon information and belief, at all times relevant, the Individual Defendant has maintained operational control over and managed the Corporate Defendant by supervising and determining the wages and compensation of employees who performed work under these contracts, by determining the company's policies with respect to payroll, establishing employees' work schedules, maintaining employee records, and through possessing the authority to hire and fire employees, including Plaintiffs and the Collective and Class Members.

17.    The Individual Defendant participated in the day-to-day operations of the Corporate Defendant and acted intentionally in his direction and control of Plaintiffs and the Defendants' other similarly situated employees, and are each an "employer" pursuant to the FLSA, 29 U.S.C. § 203(d), 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and are jointly and severally liable with the Corporate Defendant.

18.    At all relevant times, Plaintiffs and the Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

19.     Upon information and belief, at all relevant times, the Corporate Defendant has had gross revenues in excess of $500,000.00.

## FLSA COLLECTIVE ACTION ALLEGATIONS

20.     Pursuant to 29 U.S.C. §§ 206, 207 & 216(b), Plaintiffs brings their First Cause of Action as a collective action under the FLSA on behalf of themselves and the following collective:

> All persons employed by Defendants at any time since April 20, 2019 and through the entry of judgment in this case (the "Collective Action Period") who performed work for Biltmore General Contractors, Inc. as non-union building and construction employees (the "Collective Action Members").

21.     A collective action is appropriate in this circumstance because Plaintiffs and the Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policy of failing to pay proper overtime premiums for all work performed in excess of forty (40) hours each week.  As a result of this policy, Plaintiffs and the Collective Action Members did not receive overtime premium payments for all hours worked in excess of forty (40) hours per week.

22.     Plaintiffs and the Collective Action Members have substantially similar job duties and responsibilities and were paid pursuant to a similar, if not the same, payment structure – i.e., straight-time hourly rates or per-shift rates without overtime premiums.

## FED. R. CIV. P. 23 CLASS ACTION ALLEGATIONS

23.     Pursuant to the NYLL and the New York common law, Plaintiffs bring their Second through Sixth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following class:

> All persons employed by Defendants in New York at any time since September 5, 2015 and through the entry of judgment in this case

(the "Class Action Period") who performed work for Biltmore General Contractors, Inc. as non-union building and construction employees (the "Class Members").

24.     The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under the Federal Rules of Civil Procedure.

25.     The Class Members are so numerous that joinder of all members is impracticable.

26.     Upon information and belief, there are well in excess of forty (40) Class Members.

27.     Common questions of law and fact exist as to all Class Members and predominate over any questions solely affecting the individual Class Members.  Such common questions will determine Defendants' liability to all (or nearly all) Class Members. These common questions include, but are not limited to:

a.   whether Defendants employed Plaintiffs and the Class Members within the meaning of the NYLL;

b.   whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the Class Members;

c.   whether Biltmore breached contracts with local, state and/or federal governmental entities by failing to pay Plaintiffs and the Class Members, who were third-party beneficiaries of such contracts, at New York State and/or New York City prevailing wage rates;

d.   whether Biltmore failed and/or refused to pay Plaintiffs and the Class Members at the prevailing wage overtime rates for all hours worked on prevailing wage projects in

7

excess of forty (40) hours per workweek and eight (8) hours per day;

e.  whether Biltmore failed and/or refused to pay Plaintiffs and the Class Members supplemental benefits, holiday pay, and vacation day, while performing work on prevailing wage jobs as required by New York City and New York State prevailing wage schedules;

f.  whether Biltmore was unjustly enriched by failing to pay Plaintiffs and the Class Members at prevailing wage rates on prevailing wage jobs;

g.  whether Defendants failed and/or refused to pay Plaintiffs and the Class Members overtime premiums for hours worked in excess of forty (40) hours per workweek;

h.  whether Defendants failed to provide Plaintiffs and the Class Members with a proper statement of wages with every wage payment, as required by the NYLL;

i.  whether Defendants failed to provide proper wage notice to Plaintiffs and the Class Members at the beginning of their employment, as required by the NYLL;

j.  whether Defendants' failure to properly pay Plaintiffs and the Class Members lacked a good faith basis; and

k.  whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

28.  Plaintiffs' claims are typical of the Class Members' claims. Plaintiffs, like all Class Members, are non-union construction workers of Defendants who worked for Defendants pursuant to their corporate policies. Plaintiffs, like all Class Members, were, *inter alia*, not paid prevailing wages, supplemental benefits, daily/weekly overtime premium prevailing wages, or holiday

premiums for work performed at New York City Public Schools; and did not receive proper wage statements or wage notices. If Defendants are liable to Plaintiffs for the claims enumerated in this Complaint, they are also liable to all Class Members.

29.     Plaintiffs and their Counsel will fairly and adequately represent the Class. There are no conflicts between Plaintiffs and the Class Members, and Plaintiffs bring this lawsuit out of a desire to help all potential Class Members, not merely out of a desire to recover their own damages.

30.     Plaintiffs' counsel are experienced class action litigators who are well-prepared to represent the interests of Plaintiffs and the Class Members.

31.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation.

32.     Defendants are sophisticated and experienced parties with substantial resources. The individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal and/or state court against the corporate and individual defendant.  The individual members of the Class have no interest or capacity to bring separate actions; Plaintiffs are unaware of any other litigation concerning this controversy; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF FACTS

### Defendants' Business

33.     Biltmore General Contractors, Inc. is a general contractor and/or subcontractor construction corporation with over twenty (20) years in business providing construction services in both the private sector and on public works construction projects.

34.    Defendants' client list, as stated on its website, includes: the DOE, SCA, the New York City Department of Design and Construction ("DDC"), the New York City Health and Hospitals Corporation ("HHC"), and NYCHA.

35.    In addition, Defendants advertise that Biltmore has been awarded "over $30,000,000 worth of Job Order Contracts (JOC)" with some of their clients, including the NYC DOE and SCA, as well as completed JOC, Requirements and Capital Improvement Projects valued at over $50,000,000 in the past two years. (https://biltmoregc.com/about-us).

**The NYC and NJ Schools Public Works Contracts**

36.    Defendants advertise Biltmore's participation in and award of several Job Order Contracts ("JOCs") and completed Requirements and Capital Improvements Projects with multiple agencies including the New York City School Construction Authority ("SCA"), the New York Department of Education ("DOE"), and the New York City Housing Authority ("NYCHA"), among others (the "Public Works Projects").

37.    Upon information and belief, Defendants have entered certain JOCs and signed multiple Letters of Assent for the purpose of being bound to the SCA's Project Labor Agreement ("SCA PLA"), in order to provide various restructuring, renovations, and construction services at multiple New York City Public Schools. In order to fulfill the scope of work of these Projects, Defendants have employed Plaintiffs and other employees including the Class Members, to perform different classifications of construction work, including but not limited to, painters, masons, laborers, carpenters, mechanics, and other construction services.

38.    Upon information and belief, the Individual Defendant has signed multiple letters of assent as a duly authorized officer of the Corporate Defendant, attesting to be bound by the

provisions of the PLAs executed on behalf of the SCA for the relevant fiscal years.

39.    As part of the SCA's Capital Improvement Program, the SCA has entered into and negotiated PLAs and subsequent amendments with various contractors and subcontractors, including Biltmore, for certain rehabilitation and renovation work performed on New York City Public Schools throughout the relevant time period.

40.    Upon information and belief, Biltmore has solicited and been awarded multiple JOCs as a prime and/or sub-contractor with the SCA to provide construction, repair, and renovation services in New York City Public Schools that incorporated the provisions of the SCA's PLAs, which require all employees working on these projects, including Plaintiffs and the Class Members, to be paid prevailing wages. In addition, Biltmore has entered into contracts, either as the prime and/or sub-contractor to perform demolition work on New Jersey public schools (altogether, the "Public Works Contracts").

41.    Upon information and belief, under the Public Works Contracts, Biltmore was required to pay Plaintiffs and the Class Members at or above the applicable prevailing wage rates, including any required supplemental benefits, and holiday and vacation days. Biltmore's failure to pay Plaintiffs and the Class Members proper prevailing wage rates and supplemental benefits was a corporate policy that also applied to all of Defendants' other similarly situated employees, including the Class Members.

42.    As employees of Defendants who were assigned to work on Biltmore's publicly financed public school projects, Plaintiffs and the Class Members were intended third-party beneficiaries of the Public Works Contracts.

43.    As required by law, a schedule containing the prevailing rates of wages and

11

supplemental benefits ("prevailing wage schedules") to be paid to the Plaintiffs and Class Members should have been annexed to and formed a part of the Public Works Contracts. If not annexed to the Public Works Contracts, these schedules were expressly or impliedly incorporated into the contracts as a matter of law and/or public policy.

44.     The promise to pay and ensure payment of the prevailing wage and supplemental benefit rate(s) stated in the Public Works Contracts was made for the benefit of workers furnishing building construction and renovation services on New York City and New Jersey Public Schools. As such, it is clear that workers furnishing labor at these Public Schools, including Plaintiffs and the Class Members, are the beneficiaries of the contracts entered into between Biltmore and the public agencies.

45.     Upon information and belief, for their work as "Painters" on New York City Public Works Projects, Plaintiffs and Class Members should have been paid at the prevailing rate of wages of: $44.00 plus $26.37 in supplemental benefits per regular hour and $31.00 in supplemental benefits on overtime hours from July 1, 2015 through June 30, 2016; $45.50 plus $26.62 in supplemental benefits per regular hour and $31.25 in supplemental benefits on overtime hours from July 1, 2016 through April 30, 2017; $47.10 plus $27.02 in supplemental benefits per regular hour and $31.65 in supplemental benefits on overtime hours from May 1, 2017 through June 30, 2017; $45.50 plus $28.62 in supplemental benefits per regular hour and $28.62 in supplemental benefits on overtime hours from July 1, 2017 through June 30, 2018; $42.50 plus $30.87 in supplemental benefits per regular hour and $35.50 in supplemental benefits on overtime hours from July 1, 2018 through June 30, 2019; $43.00 plus $32.49 in supplemental benefits per regular hour and $37.75 in supplemental benefits per overtime hour from July 1, 2019 through June 30,

2020; $43.00 plus $34.70 in supplemental benefits per regular hour and $40.99 in supplemental benefits per overtime hour from July 1, 2020 through June 30, 2021; $43.00 plus $36.70 in supplemental benefits per regular hour and $43.79 in supplemental benefits per overtime hour from July 1, 2021 through June 30, 2022.[1] In addition, Plaintiffs should have been paid overtime premiums at time and one-half these regular rates after a 7-hour day and for work on Saturday and Sunday.

46.    For demolition work performed in Essex County (i.e., on the Newark Elementary Public School Project), Plaintiffs were entitled to be paid at the prevailing rate of wages of: $32.95 plus $29.12 in supplemental benefits from May 15, 2018 through April 30, 2019; and $33.55 plus $29.52 in supplemental benefits from May 1, 2019 through May 11, 2020.[2]

**Plaintiffs' Work for Defendants**

47.    **Plaintiff Almedin** was employed by Defendants as a Painter from approximately April 20, 2019 through approximately March 2020 (the "Almedin Employment Period").

48.    Throughout his employment, Plaintiff Almedin's duties included but were not limited to: scrape, peel, and removal of old lead paint, painting walls and ceiling areas with a paint brush, roller, and a power tool spray gun containing a tank attachment, clean and scrape rails, sheetrock and plastering, confirm that certain employees were in possession of an Office Safety and Health Administration ("OSHA") card, and assist other employees who performed work for Defendants as laborers, carpenters and masons, in setting up blue scaffolding structures for high-

---

[1] The rates listed are those of a "Painter – Spray & Scaffold/Decorative/Sandblast" from the City of New York Office of the Comptroller § 220 Prevailing Wage Schedules, consistent with the District Council of Painters #9 local union rates.
[2] The rates listed are those of a "Laborer – Building – Class B Journeyman" from the New Jersey Department of Labor and Workforce Development Prevailing Wage Rate Determinations.

ceiling areas, and cleaning and moving debris and waste materials to each school's garbage dump area.

49.    With the exception of the portion of the Almedin Employment Period when he performed work at the Michael J. Petrides School, Plaintiff Almedin was typically scheduled to work six (6) days per week, from Monday through Saturday. Plaintiff Almedin was scheduled to perform work at the NYC Public School job sites from approximately 8:00 a.m. to between 5:30 p.m. and 7:00 p.m., for a total of between approximately fifty-seven (57) to sixty-six (66) hours per week. However, as explained further below, Plaintiff Almedin also worked additional hours each week consisting of pre-shift work and travel time between Defendants' Yard and the job sites.

50.    When Plaintiff Almedin performed work at the Michael J. Petrides School, Plaintiff Almedin was scheduled to work six (6) days per week, from Monday through Saturday, from approximately 2:00 p.m. until approximately 11:00 p.m., for a total of approximately fifty-four (54) hours per week, excluding pre-shift work performed at Defendants' Yard and travel to the school job site.

51.    When Plaintiff Almedin was hired, Plaintiff Almedin met with Defendant Geiser and was told that he would be paid approximately sixty-six dollars ($66.00) per hour, which was supposedly the prevailing wage for the type of work he was interviewing for (i.e., painter work), and that if he performed good painting work he would be assigned to "better" projects.  Instead of the initial hourly rate promised to him, at all times Plaintiff Almedin was paid a per-shift rate ranging between approximately two hundred twenty-five dollars ($225.00) and two-hundred seventy-five dollars ($275.00) per day, with no benefits.

52.    Although Plaintiff Almedin inquired as to why there was a significant change in his

14

pay from what was discussed during his initial conversation with Defendant Geiser, he was not provided with any explanation besides that some changes had been made by upper management.

53.     Throughout the relevant time period, Plaintiff Almedin was not paid the applicable prevailing rate of wage nor supplemental benefits for all hours spent performing work on Public Works Projects.

54.     At no time did Plaintiff Almedin receive overtime premiums consisting of one and one-half (1.5) times his regular hourly rate for weeks in which he worked in excess of forty (40) hours, let alone the correct prevailing wage overtime premiums for hours worked over eight (8) per day and/or forty (40) per week.

55.     Throughout his employment, Plaintiff Almedin received his wage payments entirely in cash with no paystub, payment receipt, or similar document reflecting his wages and the hours he had worked each week.

56.     **Plaintiff Agron** was employed by Defendants during two (2) separate periods from approximately 2010 to 2017 on a seasonal basis and then again from approximately November 2018 through approximately March 2020 on a full-time basis (the "Agron Employment Period").

57.     During the period between approximately 2010 throughout 2017, Plaintiff Agron primarily worked at Defendants' Yard sorting equipment and tools and driving, parking and unparking Defendants' trucks for other employees who performed work for Defendants at construction projects. For certain shifts during this period, Plaintiff Agron was also required to perform work on Defendants' construction projects, which consisted of cleaning up waste materials and loading and unloading equipment and tools from Defendants' company van.

58.     During the period between approximately November 2018 until the end of the

Agron Employment Period in or around March 2020, Plaintiff Agron performed work as a Painter for Defendants at various Public Works Projects.

59.    As a Painter, Plaintiff Agron's duties included but were not limited to: scrape, peel, and removal of old lead paint, painting walls and ceiling areas with a paint brush, roller, and a power tool spray gun containing a tank attachment, clean and scrape rails, sheetrock and plastering.

60.    At certain projects, including at Flushing High School and the Michael J. Petrides School, Plaintiff Agron also served as the foreman. As a working foreman, in addition to his regular painting tasks, Plaintiff Agron was also responsible for confirming with Defendant Geiser that employees arrived at the project site on time, confirming which tools and equipment needed to be replenished for the next shifts, picking up and driving materials to/from Defendants' Yard and the project sites, and recording employee social security numbers on payroll records provided by Defendant Geiser.

61.    From in or around 2010 through approximately 2017, when Plaintiff Agron was employed on a seasonal basis, Plaintiff Agron typically worked eight (8) hour shifts from Monday through Friday.

62.    During the Agron Employment Period when Plaintiff Agron worked as a Painter, Plaintiff Agron was typically scheduled to work between five (5) to six (6) days per week, from Monday through Saturday, from approximately 8:00 a.m. to between approximately 3:30 p.m. through 7:00 p.m., for a total of between approximately fifty-seven (57) to sixty-six (66) hours per week. However, as explained further below, Plaintiff Agron worked additional hours each week which were not compensated, consisting of pre-shift work and travel time between Defendants' Yard and the job sites.

63.    When Plaintiff Agron performed work at the Michael J. Petrides School, Plaintiff Agron was scheduled to work six (6) days per week, from Monday through Saturday, from approximately 2:00 p.m. until approximately 11:00 p.m., for a total of approximately fifty-four (54) hours per week, excluding pre-shift work performed at Defendants' Yard and travel to the school job site.

64.    From between approximately 2010 to approximately 2016, Plaintiff Agron was paid an hourly rate of between ten dollars to twelve dollars ($10.00-$12.00) per hour.

65.    When Plaintiff Agron was hired full-time to perform construction work on the Public Works Projects in or around November 2018, Plaintiff Agron met with Defendant Geiser and was told that he would be paid approximately seventy dollars ($70.00) per hour, which was supposedly the prevailing wage for the type of work he was interviewing for (i.e., Painter), and that in addition he would receive between a ten to fifteen percent (10-15%) bonus of his weekly wages for his work as a foreman. Instead of the rate promised to him, Plaintiff Agron was paid a per-shift rate ranging between approximately two hundred fifty dollars ($250.00) and two-hundred seventy-five dollars ($275.00) per day.

66.    From approximately 2010 through 2017, Plaintiff Agron received his wages entirely in cash. During the time Plaintiff Agron was employed as a Painter, from November 2018 to approximately March 2020, Plaintiff Agron received his wage payments by check or in a combination of check and cash payments. Plaintiff Agron was specifically told by Defendant Geiser that his overtime hours for work performed on weekends would not be paid via check and instead would be paid in separate cash payments.

67.    During his employment with Defendants, Plaintiff Agron witnessed several

17

employees who performed work for Defendants as Painters and laborers on Public Works Projects receive their wages in cash payments. On projects where Plaintiff Agron served as a foreman, Plaintiff Agron was sometimes instructed to text the names of each employee who reported to the project site to Defendant Geiser's daughter, Amanda Geiser, along with those employees' respective per-shift rates.

68.    Throughout their respective employment periods, Plaintiffs were required to load Defendants' truck with construction materials that were needed to perform the work at each job site. The loading of materials was typically done every two (2) to three (3) days, depending on the needs for each individual job site and how much material was utilized between shifts. Although they were routinely required to perform these tasks, Plaintiffs were not paid wages of any kind for time spent loading/unloading materials at Defendants' office and at the Public Works Projects, or traveling from Defendants' office to the job sites.

69.    While working at the Flushing HS Project, Plaintiffs would arrive at the Defendants' Yard at approximately 5:30 a.m. to load the materials onto the truck, which on average took between approximately thirty (30) minutes to one (1) hour. The travel time from Defendants' Yard to Flushing High School was approximately one (1) hour to one hour and a half (1.5) without traffic. Once they arrived at Flushing High School, Plaintiffs spent an additional thirty (30) minutes to one (1) hour unloading the truck materials and moving them inside the school work area. On average, Plaintiffs spent between approximately four and a half (4.5) to six (6) additional hours per week loading materials onto the truck at Defendants' Yard and traveling to the Flushing HS Project for which they were not compensated. At the Michael J. Petrides Project, Plaintiffs spent between approximately two and a half (2.5) to three hours and forty-five minutes (3.75) per week

18

loading materials at Defendants' Yard and traveling to the job site for which they were not compensated.

70.     Depending on the project location and daily traffic, Plaintiffs spent between approximately one and a half (1.5) to three hours and forty-five minutes (3.75) per week in loading and unloading materials and traveling from Defendants' Yard to the project locations per week for which they were paid no wages of any kind.

71.     During the approximately two (2) weeks while performing work at the Newark Elementary School Project, Plaintiffs were required to perform demolition work, consisting of cracking and destroying cement and then refilling the cracks with dirt and gravel with a cement floor filler. Plaintiffs performed this demolition work along with approximately twelve (12) other employees of Defendants.

72.     Upon information and belief, pursuant to the Prevailing Wage Determination for Essex County, New Jersey, for their work at the Newark Elementary School Project, Plaintiffs should have been paid a base hourly wage rate of $34.10 plus benefits of $30.27 per hour, for a total prevailing wage rate of $64.37 per hour.

73.     At no point during the relevant time period, did Defendants maintain a formal timekeeping system for recording Plaintiffs' or the Collective and Class Members' actual hours worked.

74.     For their work on Public Work Projects, Plaintiffs were paid per-shift rates that fell below the applicable prevailing rate of wages and supplemental benefits owed for all hours spent performing work on the Public Work Projects.

75.     At no time did Plaintiffs receive overtime premiums consisting of one and one-half

(1.5) times their regular hourly rate for weeks in which they worked in excess of forty (40) hours, let alone the correct prevailing wage overtime premiums for hours worked over eight (8) per day and/or forty (40) per week.

76.    In or around March 2020, Plaintiffs were told by Defendant Geiser that there were no more projects available at the time and since then Plaintiffs were not assigned to any more shifts.

**Defendants' Unlawful Corporate Policies**

77.    Plaintiffs and the Class Members were all paid pursuant to the same corporate policies of Defendants, including failing to pay overtime premiums for hours worked over 40 in a given workweek, and failing to pay prevailing wage rates, supplementary benefits, and daily and weekly prevailing wage overtime.

78.    Although on several projects Plaintiffs primarily performed painting work, Plaintiffs were paid per-shift rates that fell below the applicable prevailing wage rates for their classification of work. In addition, Plaintiffs know of other individuals employed by Defendants to perform construction services who worked at the same projects and who similarly were paid per-shift rates ranging from between two-hundred dollars to two-hundred seventy-five dollars ($200.00 - $275.00) per shift.

79.    Throughout the relevant time period, Defendants did not provide Plaintiffs or the Class Members with a proper statement of wages containing the dates of work covered by their wage payments; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if

applicable; the complete and total number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

80.    Defendants did not provide Plaintiffs or Class Members with proper wage notices at the time of hire.

81.    Upon information and belief, throughout the Class Period and continuing until today, Defendants failed to maintain accurate and sufficient time and payroll records or provide such records to employees.

**FIRST CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiffs and the Collective Action Members)**

82.    Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

83.    Defendants violated the FLSA overtime rights of Plaintiffs and the Collective Action Members by failing to pay overtime premiums of one and one-half (1.5) times employees' regular hourly rates for all hours worked in excess of forty (40) hours per week.

84.    By failing to pay overtime at a rate not less than one and one-half times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 et seq., including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

85.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

86.    Defendants' failure to pay overtime caused Plaintiffs and the Collective Action

Members to suffer loss of wages and interest thereon. Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiffs and the Class Members)**

87.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

88.     Defendants violated the NYLL overtime rights of the Plaintiffs and the Class Members by failing to pay overtime premiums consisting of one and one-half (1.5) times employees' regular hourly rates for all hours worked in excess of forty (40) hours per week.

89.     Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half times the regular rate of pay for hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

90.     Defendants' failure to pay overtime premium compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon. Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) et seq.

**THIRD CAUSE OF ACTION**
**NEW YORK LABOR LAW – WAGE NOTICE VIOLATIONS**
**(Brought on Behalf of Plaintiffs and the Class Members)**

91.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

92.     Defendants have willfully failed to supply Plaintiffs and the Class Members notice as required by Article 6, § 195(1), in English or in the language identified by Plaintiffs and the Class Members as their primary language, containing Plaintiffs' and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay, if applicable; the regular pay day designated by the employer in accordance with the NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer' the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

93.     Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants fifty dollars ($50.00) per employee for each day that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per employee, as provided for by NYLL, Article 6, §§ 190, 198 (1-b), et seq., liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**FOURTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – WAGE STATEMENT VIOLATIONS**
**(Brought on Behalf of Plaintiffs and the Class Members)**

94.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

95.     Defendants have willfully failed to supply Plaintiffs and the Class Members a proper wage statement as required by Article 6, § 195(3).

96.     Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants two hundred fifty dollars ($250.00) per employee for each workweek that the violations occurred or continue to occur, or a total of five thousand dollars ($5,000) per employee, as provided for by NYLL §§ 198(1-d) liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**FIFTH CAUSE OF ACTION**
**BREACH OF CONTRACT**
**(Brought on Behalf of Plaintiffs and the Class Members)**

97.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

98.     The Public Works Contracts entered into by Biltmore with New York City and/or New York State agencies and municipalities contained or should have contained schedules of the prevailing rates of wages and supplemental benefits or reference to the NYLL provisions governing payment of prevailing wages to be paid to Plaintiffs and the employees performing work

pursuant to such contracts.

99.     Those prevailing rates of wages and supplemental benefits were made part of the Public Works Contracts for the benefit of the Plaintiffs, and the other employees performing work pursuant to such contracts. In the event that the contracts or agreements entered into failed to explicitly contain prevailing wage schedules, the prevailing wage requirements were supplemented as a matter of law, requiring Biltmore to pay the Plaintiffs and Class Members prevailing wages, daily/weekly overtime and supplemental benefits for all work performed.

100.    Biltmore's willful failure to pay Plaintiffs and the Class Members at the correct prevailing wage rates for straight time, overtime, and supplemental benefits for work performed at Public Works Projects constituted a material breach of the contracts entered into directly or indirectly between Biltmore and certain public entities.

101.    As a result of Biltmore's failure to pay Plaintiffs and the Class Members at prevailing wage rates, and Defendants' policies of paying their employees entirely in cash or in a combination of cash and check at less than the applicable prevailing wage rates for the classification of work they performed, Plaintiffs and the Class Members are entitled to relief from Biltmore for breach of contract under the New York common law of contracts.

**SIXTH CAUSE OF ACTION**
**UNJUST ENRICHMENT & QUANTUM MERUIT**
**(Pled In The Alternative)**
**(Brought on Behalf of Plaintiffs and the Class Members)**

102.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

103.    Based on Biltmore's failure to pay Plaintiffs and the Class Members the appropriate

prevailing wage rates, Biltmore was unjustly enriched at the expense of Plaintiffs and the Class Members.

104.    Equity and good conscience require that Biltmore pay restitution to Plaintiffs and the Class Members.

105.    Upon information and belief, when Biltmore entered into the Public Works Contracts and all subsequent amendments, it agreed to pay the required prevailing wages, overtime, shift-differential and holiday premiums, and supplemental benefit rates of pay to Plaintiffs and other construction workers employed by Biltmore who performed work pursuant to the contracts.

106.    Plaintiffs and the Class Members provided valuable services to Biltmore performing construction trade work for which Plaintiffs and the Class Members are entitled to the legally-required prevailing wage compensation. Biltmore knowingly accepted such services yet deliberately failed to pay Plaintiffs and the Class Members the reasonable value of such services as defined by the New York State and New York City prevailing wage schedules.

107.    As a result of Biltmore's failure to pay Plaintiffs and the Class Members at prevailing wage rates and Biltmore' corresponding unjust enrichment, Plaintiffs and the Class Members are entitled to relief from Biltmore under New York's common law of unjust enrichment.

**SEVENTH CAUSE OF ACTION**
**FAILURE TO PAY PREVAILING WAGES - NJPWA**
**(Brought on Behalf of Plaintiffs, Individually)**

108.    Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

109.    NJPWA provides that "if any workman is paid less than the prevailing wage to

which such workman is entitled under the provisions of this act such workman may recover in a civil action the full amounts of such prevailing wage less any amount actually paid to him or her by the employer, together with costs and such reasonable attorneys' fees."

110.    Upon information and belief, when Biltmore entered into the contract to perform work at New Jersey Public School(s), it agreed to pay the required prevailing wages, overtime, shift-differential and holiday premiums, and supplemental benefit rates of pay to Plaintiffs and other construction workers who performed work pursuant to the contracts.

111.    As a result of Biltmore's failure to pay Plaintiffs at prevailing wage rates, Plaintiffs are entitled to relief from Biltmore pursuant to the New Jersey Prevailing Wage Act.

### PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective Action Members and Class Members, respectfully request that this Court grant the following relief:

a.    Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

b.    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiffs and their counsel to represent the Class;

c.    An order tolling the statute of limitations;

d.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA, NYLL and the New York common law, and the NJPWL;

e.    An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.    An award of compensatory damages as a result of Defendants' failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.    An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay overtime compensation pursuant to the NYLL and supporting regulations;

h.    An award of monetary damages to be proven at trial for all unpaid prevailing wages, daily/weekly overtime, supplemental benefits, and holiday premiums owed to Plaintiffs and the Class;

i.    An award of liquidated damages for Defendants' failure to pay all wages to which Plaintiffs and the Class Members are entitled, pursuant to the NYLL and supporting regulations;

j.    Fifty dollars ($50) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195(1) occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-b;

k.      Two hundred and fifty dollars ($250) per Plaintiff and each of the Class Members

for each day that the violations of NYLL, Article 6 § 195(3) occurred or continue

to occur, up to a maximum of five thousand dollars ($5,000) per Plaintiff and each

of the Class Members as provided for by NYLL, Article 6 § 198(1)-d;

l.      An award of prejudgment and post-judgment interest;

m.      An award of costs and expenses of this action together with reasonable attorneys'

and expert fees; and

n.      Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial

by jury on all questions of fact raised by the complaint.

Dated: New York, New York
        April 20, 2022

Respectfully submitted,

**PELTON GRAHAM LLC**

By: _____
Brent E. Pelton, Esq.
Pelton@PeltonGraham.com
Taylor B. Graham, Esq.
Graham@PeltonGraham.com
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiffs and the putative*
*FLSA Collective and Class*

29

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Biltmore General Contractors, Inc., Frank Geiser, and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me prevailing wages and regular and/or overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct.  I authorize being **named as a representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.  I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees.  I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first.  I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf.  I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

DocuSigned by:

634916A741544DC...
_____          Almedin Ramic
_____
        Signature                              Printed Name

DocuSign Envelope ID: 7DE453AF-A353-4B71-B072-5CA29E33B887

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Biltmore General Contractors, Inc., Frank Geiser, and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me prevailing wages and regular and/or overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct.  I authorize being **named as a representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.  I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees.  I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first.  I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf.  I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

DocuSigned by:

*Agron Goni Ramic*

EEC4363B21984AE...

_____          Agron Goni Ramic

Signature                                          _____
                                                          Printed Name